04-CV-2896 (NGG) (LB)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

KAREN GUPTA,

Plaintiff,

-against-

NEW YORK CITY SCHOOL CONSTRUCTION
AUTHORITY,

Defendant.

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

### MICHAEL A. CARDOZO
*Corporation Counsel of the City of New York*
Attorney for Defendant
100 Church Street, Room 2-107
New York, N.Y. 10007-2601

Of Counsel:   Joanna Helferich

Tel:      (212) 788-0879

NYCLIS No.: 04 LE 000256

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ............................................................................................... 1

STATEMENT OF FACTS ...................................................................................................... 2

ARGUMENT ........................................................................................................................ 2

    POINT I .......................................................................................................................... 2

        THE COURT LACKS SUBJECT MATTER
        JURISDICTION OVER SOME OF PLAINTIFF'S
        CLAIMS AND HIS FAILURE TO PROMOTE TO
        THE POSITION OF DIRECTOR,
        ARCHITECTURE AND ENGINEERING, CLAIM
        IS TIME BARRED ....................................................................................... 2

        A.   Subject Matter Jurisdiction. ................................................................ 2

        B.   Time Bar.............................................................................................. 4

    POINT II ......................................................................................................................... 5

        PLAINTIFF CANNOT ESTABLISH, AS A
        MATTER OF LAW, HIS CLAIMS OF
        DISCRIMINATION ON THE BASIS OF RACE,
        NATIONAL ORIGIN, OR AGE ................................................................. 5

        A.   Summary Judgment Standard .............................................................. 5

        B.   The Applicable Analytic Framework In
        Discrimination Cases .................................................................... 6

        C.   Plaintiff Cannot Make Out a *Prima Facie* Case
        - Failure to Promote Claims.......................................................... 6

        D.   Plaintiff Cannot Make Out a *Prima Facie* Case
        - Plaintiff's Termination ............................................................... 8

        E.   Plaintiff Cannot Make Out a *Prima Facie* Case
        - Failure to Re-Hire Claim ......................................................... 10

        F.   Legitimate, Non-Discriminatory Reasons -
        Failure to Promote Claims.......................................................... 11

G.   Legitimate,   Non-Discriminatory   Reasons   -
Plaintiff's Termination................................................................................ 13

H.   Legitimate,   Non-Discriminatory   Reasons   -
Failure to Re-Hire Claims......................................................................... 14

I.   Plaintiff Cannot Show Pretext ........................................................... 15

POINT III...................................................................................................................... 19

PLAINTIFF'S   RETALIATION   CLAIM   IS
INSUFFICIENT AS A MATTER OF LAW AND
MUST BE DISMISSED ........................................................................... 19

CONCLUSION............................................................................................................... 22

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

KAREN GUPTA,

                                    Plaintiff,

               -against-

NEW YORK CITY SCHOOL CONSTRUCTION
AUTHORITY,

                                    Defendant.

------------------------------------------------------------------------ x

04-CV-2896 (NGG) (LB)

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

### PRELIMINARY STATEMENT

           Plaintiff, Karen Gupta, brings this Title VII and ADEA action alleging that

defendant, School Construction Authority ("SCA"),  discriminated against him by failing to

promote him, terminating him, and failing to re-hire him on the basis of his race, national origin,

and age.[1]  Plaintiff was terminated as part of a reduction in force that saw nearly 50% of all SCA

employees laid off.

           Defendant moves for complete summary judgment on the grounds that: (1) one of

plaintiff's failure to promote claims is time-barred; (2) plaintiff's race discrimination and failure

to re-hire claims are barred for lack of subject matter jurisdiction because they were not alleged

in his EEOC charge and are not reasonably related to his EEOC charge; (3) plaintiff cannot

---

[1]    While it is neither alleged in his EEOC charge nor his federal complaint, plaintiff also seems to be claiming that he was retaliated against for pursing a lawsuit. <u>See</u> Plaintiff's Dep., Exhibit "B," at 118:1-22.

establish a *prima facie* case because he cannot establish an inference of discrimination with respect to any of the actions about which he complains; and (4) plaintiff cannot demonstrate that defendant's legitimate non-discriminatory reasons for these actions are pretextual in nature.

## STATEMENT OF FACTS

The Court is respectfully referred to defendant's Statement of Undisputed Facts Under Local Civil Rule 56.1, dated July 28, 2006 ("56.1 Statement"), the Declaration of Joanna Helferich, dated July 28, 2006 ("Helferich Decl.") and the supporting evidence cited to therein for a statement of pertinent and material facts. All references to "Exhibits" are to the exhibits annexed to the Helferich Decl.

## ARGUMENT

### POINT I

**THE COURT LACKS SUBJECT MATTER JURISDICTION OVER SOME OF PLAINTIFF'S CLAIMS AND HIS FAILURE TO PROMOTE TO THE POSITION OF DIRECTOR, ARCHITECTURE AND ENGINEERING, CLAIM IS TIME BARRED**

**A.      Subject Matter Jurisdiction.**

Claims under the Title VII must first be alleged in the EEOC discrimination charge in order to be alleged in a federal court action. See Butts v. City of New York Dep't of Hous. Preservation and Dev., 990 F.2d 1397, 1400 (2d Cir. 1993). Under Butts a claim may be brought even if not contained in the EEOC charge provided that: (1) the claims are "reasonably related" to the EEOC charge; or (2) the retaliation is for the filing of the EEOC complaint; or (3) where a plaintiff alleges incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge. See Butts, 990 F.2d at 1402-1403.

When plaintiff filed his charge with the EEOC, he checked only the boxes for national origin and age discrimination. He did not check the box "race." See EEOC Charge, Exhibit "CC." Nor did he allege any facts that suggested that he had claims based on both race and national origin. Therefore, he failed to give adequate notice to the EEOC to investigate both kinds of claims, and his claims based on race discrimination must be dismissed. See Delly v. H.I.R.E. Inc., et al., 2004 U.S. Dist. LEXIS 20446 at *9-10 (E.D.N.Y. Oct. 13, 2004).

Furthermore, plaintiff's failure to re-hire claims must be dismissed because they were not alleged in the EEOC charge, and they are not reasonably related to the allegations in that charge. See EEOC Charge, Exhibit "CC." The purpose of the Title VII administrative procedures requirement, and the corresponding "reasonably related" requirement, is that the EEOC must have the opportunity to investigate claims, mediate, and take remedial action. See Butts, 990 F.2d at 1401-02. Plaintiff filed his charge on August 27, 2003, and the EEOC issued its right to sue letter on May 28, 2004. See EEOC Charge and Right to Sue Letter, annexed to the Complaint, Exhibits "CC" and "A." SCA did not even begin to contract with private consulting firms for temporary services until December, 2003, and did not begin to contract with temporary employment agencies until June 2004, the latter date is after the EEOC had concluded its investigation. See Barrett Decl. at ¶ 6. Moreover, SCA has hired only one employee in the title that plaintiff formerly occupied since the 2003 lay-offs. The SCA did not post for this single position until February 15, 2005, well after the administrative processes had concluded and this action had been commenced. See Defendant's Verified Response to Plaintiff's Interrogatory No. 7, Exhibit "P;" Job Posting, Exhibit "AA." The EEOC was not given the opportunity to investigate these claims, and to permit them to be pressed here would effectively eliminate the

administrative mechanisms created by the statute.   Thus, the Court lacks subject matter

jurisdiction over all race claims and the "re-hiring" claim and they must be dismissed.

**B.     Time Bar**

Plaintiff's Title VII and ADEA claims which allegedly occurred more than 300

days before plaintiff filed his charge with the Equal Employment Opportunity Commission

("EEOC") are time-barred.[2]  See  42 U.S.C. § 2000e-5(e)(1); 29 U.S.C. § 626; National R.R.

Passenger Corp. v. Morgan, 536 U.S. 101, 110 (2002); Tewksbury v. Ottaway Newspapers, Inc.,

192 F.3d 322, 325, 328-29 (2d Cir. 1999).  Plaintiff filed a charge of employment discrimination

based on national origin and age with the EEOC on August 27, 2003.  See EEOC Charge,

Exhibit "CC."  Therefore, any claims allegedly occurring before October 31, 2002, are time-

barred.  Plaintiff was interviewed on August 8, 2002, and Mr. Abneri was appointed to the

Director title on October 1, 2002.  See Interview Form and Memorandum, Exhibits "F" and "H."

Because these events occurred outside the allowable 300 day period, any of plaintiff's claims

relating to this promotion must be dismissed.

---

[2] Plaintiff only filed with the EEOC, and did not file with the State Division on Human Rights.
Thus, at least for plaintiff's Title VII claims, the 180 day statute of limitations should apply.
Ford v. Bernard Fineson Development Center, 81 F.3d 304, 307 n.6 (2d Cir. 1996).   For
purposes of this part of the argument this distinction is irrelevant.

## POINT II

## PLAINTIFF CANNOT ESTABLISH, AS A MATTER OF LAW, HIS CLAIMS OF DISCRIMINATION ON THE BASIS OF RACE, NATIONAL ORIGIN, OR AGE

### A.   Summary Judgment Standard

A motion for summary judgment must be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." F.R.C.P. 56 (C). Although the moving party bears the initial burden of showing that there is no genuine issue of material fact, once that burden has been met, the non-moving party cannot rely on conclusory allegations or speculations, but must set forth "specific facts indicating that a genuine issue of fact exists" to defeat the motion for summary judgment. Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998). "Statements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment." Bickerstaff v. Vassar College, 196 F.3d 435, 452 (2d Cir. 1999), cert. denied, 530 U.S. 1242 (2000).

In discrimination cases, plaintiffs have the ultimate burden of persuading the trier of fact that the defendants intentionally discriminated against them. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133 (2000). Accordingly, summary judgment in favor of the defendants must be granted if, based on the evidence presented, no reasonable jury could conclude that discrimination was a determinative factor in defendants' actions. Schnabel v. Abramson, 232 F.3d 83, 91 (2d Cir. 2000).

**B.      The Applicable Analytic Framework In Discrimination Cases**

Under the framework set forth by the Supreme Court in McDonnell Douglas Corp. v. Green, a plaintiff asserting a claim under Title VII must first establish a *prima facie* case of discrimination.  411 U.S. 792 (1973).  In order to do so, he must demonstrate that he: (1) is a member of a protected class; (2) was qualified for the position; (3) suffered an adverse employment action; and (4) the adverse employment action took place under circumstances that give rise to an inference of discrimination.  See Stern v. Trustees of Columbia Univ., 131 F.3d 305, 311-12 (2d Cir. 1997).  If a *prima facie* case is established, the burden of production, but not persuasion, shifts to the employer to set forth a legitimate non-discriminatory reason for the termination.  St. Mary's Honor Society v. Hicks, 509 U.S. 502, 509 (1993).  Once the employer has met its burden of showing a legitimate, non-discriminatory reason for the employment action, the employee must then show that the reason advanced is pretextual--i.e., that it masks the employer's true discriminatory reason for its actions.  See Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 254-56 (1981).[3]  The burden of production shifts under the McDonnell Douglas framework, but the burden of persuasion is always on the plaintiff.

**C.      Plaintiff Cannot Make Out a *Prima Facie* Case - Failure to Promote Claims**

As illustrated in Point I, supra, plaintiff's claim for failure to promote him to the position of Director, Architecture and Engineering, is barred by the applicable statute of limitations.  Assuming, arguendo, that it were not so barred and that plaintiff could establish the first three elements of a prima facie case with respect to this promotion, plaintiff has offered no evidence to support an inference of discrimination.  Plaintiff has failed to put forth any evidence

---

[3]    This same burden shifting analysis applies to plaintiff's ADEA claims.  See Austin v. Ford Models, Inc., 149 F.3d 148, 152 (2d Cir. 1998).

whatsoever of discriminatory animus or derogatory comments on the part of Kenneth Karpel, who conducted the interviews for this position and selected Mr. Abneri. <u>See</u> Plaintiff's Dep., Exhibit "B," at 78:11-79:1. Plaintiff simply relies on the fact that Mr. Abneri is younger and of a different race and national origin than plaintiff. This cannot suffice to carry plaintiff's burden under any of the anti-discrimination laws. <u>See</u> <u>Richardson v. Newburgh Enlarged City Sch. Dist.</u>, 984 F. Supp. 735, 744 (S.D.N.Y. 1997) ("Simply because (1) some [co-workers] had complaints about [plaintiff], and (2) [plaintiff] is African-American does not compel the conclusion that (3) those [co-workers] had misgivings about [plaintiff] because [plaintiff] is African-American. This is the type of groundless speculation that summary judgment is designed to root out."); <u>Manessis v. New York City Dept. of Transp.</u>, 2003 U.S. Dist. LEXIS 1921, at *11 (S.D.N.Y. Feb. 10, 2003)(citing <u>Lipton v. Nature Co.</u>, 71 F.3d 464, 469 (2d Cir. 1995)("[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment."). Plaintiff admits that Mr. Abneri was qualified, but maintains that he was more qualified for the promotion than Mr. Abneri. These are simply conclusory allegations. <u>See</u> Plaintiff's Dep., Exhibit "B," at 71:7-72:11. Even if plaintiff were more qualified than Mr. Abneri, which he has not demonstrated, he could not prevail on his claim solely on that basis, unless no reasonable person could have selected Mr. Abneri. <u>See</u> <u>Byrnie v. Town of Cromwell Bd. of Educ.</u>, 243 F.3d 93, 103 (2d Cir. 2001). In <u>Brynie</u> the Second Circuit held that in order to defeat a motion for summary judgment on the basis of a discrepancy in qualifications, the plaintiff's credentials would have to be so superior to the credentials of the person selected for the job that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job.

Id.(internal citations and quotations omitted).    Plaintiff has not made such a showing, and his
claim must be dismissed.

     With respect to plaintiff's second failure to promote claim, to the position of
Managing Architect B, posted on October 7, 2002, plaintiff cannot show that he has suffered an
adverse employment action.   Due to the reorganization of the SCA and the reduction in force
announced on October 31, 2002, this position was <u>not</u> filled.   <u>See</u> Employee Action Form,
Exhibit "O," showing that no candidate was selected; and Defendant's Verified Response to
Plaintiff's Interrogatory No. 2, Exhibit "P."   No one was selected for the promotion and, under
<u>McDonnell Douglas</u>, plaintiff cannot show a *prima facie* case of discrimination on the basis of
his race, age, or national origin.   Therefore, this claim must be dismissed.

## D.  Plaintiff Cannot Make Out a *Prima Facie* Case - Plaintiff's Termination

     Plaintiff was laid off as part of a large-scale reorganization of the SCA, which
was mandated by the mayor, and resulted in a reduction in SCA's workforce by 362 employees.
<u>See</u> 56.1 Statement, ¶¶ 24-26.   Plaintiff was one of the 77 employees in the Architecture and
Engineering department to have been laid off.   Prior to the layoffs, there were 165 employees in
that department.   <u>See</u> Barrett Decl.   Plaintiff has not offered any evidence that suggests that his
termination was a result of discriminatory animus and admits that he did not hear any
discriminatory remarks.   Plaintiff's Dep., Exhibit "B," at 106:3-13.   Plaintiff has certainly not
suggested which other employee who was retained on the job should have been dismissed
instead of plaintiff.   Plaintiff's basis for his allegation of discriminatory animus rests solely on
his subjective view that he was well-qualified and that he was not given an explanation or
justification for the decision to lay him off.   <u>See</u> Plaintiff's Dep., Exhibit "B," at 99:10-20;
100:8-13.   He does not allege that others who were retained were unqualified or that others laid
off were given reasons for their selection for lay off.   Plaintiff does not even allege that there is

any particular individual whom he was more qualified than or who should have been terminated in his place.  Plaintiff does not meet his burden with these conclusory allegations.

On the contrary, all of the evidence in the record supports a finding that SCA's RIF and the layoffs in the A&E department were conducted without discriminatory bias or animus.  SCA performed an analysis to determine whether its neutral layoff policy for SCA Managers would result in a disparate impact against any racial, age, or gender group.  The study showed a difference of less than two standard deviations between the minority and majority lay off rates.  See Disparate Impact Analysis, Exhibit "T."  The Second Circuit has held that there must be a statistically significant disparity of at least two standard deviations in order to warrant an inference of discrimination.  See Malave v. Potter, 320 F.3d 321, 327 (2d Cir. 2003)(citing Smith v. Xerox Corp., 196 F.3d 358, 365 (2d Cir. 1999).  Moreover, the characteristics of those who were retained in plaintiff's title do not even suggest that any discrimination on the basis of race, national origin, or age took place.  All nine individuals in the Managing Architect A title, other than plaintiff, at the time of the RIF were white, four of whom were laid-off along with plaintiff.  See 56.1 Statement, ¶¶ 34, 35; List of SCA employees who were laid-off, resigned, or participated in a retirement incentive program as part of the reduction in force, Exhibit "Q"; List of SCA Employees as of September 17, 2003, Exhibit "L"; Defendant's Verified Response to Plaintiff's Interrogatory No. 9, Exhibit "U."  Furthermore, two of the five individuals who were retained in plaintiff's title were older than plaintiff, one of whom was fifteen years older, at the age of 76.  In addition, two individuals in the Managing Architect A title who were younger than plaintiff were laid-off, at the ages of 44 and 51.  See id.  Thus, age, national origin and race were irrelevant to the issue of who was chosen to be laid off during the RIF.  Plaintiff has produced no

evidence to support an inference of discrimination with respect to his layoff, and therefore, this claim must be dismissed.

**E.   Plaintiff Cannot Make Out a *Prima Facie* Case - Failure to Re-Hire Claim**

As an instant matter, plaintiff does not identify any specific position for which he applied (either directly with SCA or with temporary agencies and consulting firms) and for which SCA did not hire him. See Plaintiff's Dep., Exhibit "B," at 107: 2-9; 122:9-123:1. As such, plaintiff does not meet the pleading requirements, and this claim must be dismissed. See Brown v. Coach Stores, 163 F.3d 706, 710-712 (2d Cir. 1998) Nevertheless, even if plaintiff did meet his pleading requirement, he cannot establish an inference of discrimination. Since the 2003 layoffs, SCA has re-hired only one individual in plaintiff's title, Managing Architect A, Angelo Liarikos.[4] See Defendant's Verified Response to Plaintiff's Interrogatory No. 7, Exhibit "P." On February 15, 2005, SCA posted the position Manager Level A (Engineer or Architect), Posting Number 0537-489. See Job Posting, Exhibit "AA." Plaintiff did not apply for this position. See Plaintiff's Dep., Exhibit "B," at 122:9-123:1; Roster of Candidates Responding to Posting, Exhibit "BB." Plaintiff's failure to apply to this position is an end to his claims. See Petrosino v. Bell Atlantic, 385 F.3d 210 (2d Cir. 2004)(holding that a specific application requirement applies to failure to promote cases in part because this requirement "protects employers from the unfair burden of having 'to keep track of all employees who have generally expressed an interest in promotion and [to] consider each of them for any opening for which they are qualified but did not specifically apply')(quoting Brown v. Coach Stores, 163 F.3d at 710);

---

[4] Re-hiring a single individual, here Liarikos, of four laid off is not evidence that the RIF was somehow invalid. See Viola v. Philips Medical Systems, 42 F.3d 712, 718 (2d Cir. 1994)("That an employer reconsiders its business strategy and consequently rehires an employee -- Florence Continued...

Dow v. West, 2002 Dist. LEXIS 16772 at *12 (W.D.N.Y., August 16, 2002)(no *prima facie* case of failure to hire or retaliation where plaintiff didn't apply to positions that became open after he was terminated pursuant to a RIF).   Indeed, plaintiff here is identical in all relevant respects to the plaintiff in Dow and, as in Dow, the failure to re-hire claim must be dismissed.

Plaintiff seems to claim that he is being discriminated against by SCA because he has not been hired by temporary agencies or private consulting firms to perform services at SCA. Employees of temporary agencies and consulting firms who perform services at SCA are not employees of SCA.   SCA does not control the hiring of these firms and SCA neither pays these individuals nor provides them with benefits.   See Barrett Declaration at ¶ 7.   Rather, they are paid and controlled by the firm or agency with whom SCA contracts.   Plaintiff offers no evidence that employees of these firms and agencies are employees of SCA.   Thus plaintiff has not demonstrated that he has suffered an adverse employment action at the hands of the SCA by the allegations that employees of these outside firms are performing services for the SCA. Moreover, plaintiff has not offered any evidence whatsoever of discriminatory animus on the part of SCA.   Therefore, plaintiff has not established a *prima facie* case with respect to his failure to re-hire claim, and it must be dismissed.

## F.    Legitimate, Non-Discriminatory Reasons - Failure to Promote Claims

Assuming, *arguendo*, that this Court finds that plaintiff has established a *prima facie* case of discrimination, plaintiff's claims must fail because the defendant has nonetheless provided numerous legitimate, non-discriminatory reasons for its actions.

---

in this instance -- does not, without more, cast any doubt on the economic justification for the earlier termination.").

Defendant made a legitimate, non-discriminatory decision when it chose to promote Elan Abneri instead of plaintiff to the director position. At the time of the interviews, Mr. Abneri had 12 years of experience at SCA, in contrast to plaintiff's one-year and four months. Almost six years of Mr. Abneri's experience was in a managerial position. During Mr. Abneri's career at SCA, before his interview for the Director position, he received only "Outstanding" and "Very Good" performance evaluations, and was promoted twice. See Performance Evaluations, Exhibits "I," "J," and "K." Plaintiff, during his short time at SCA, received one performance evaluation, which was "Good." See Plaintiff's Performance Evaluation, Exhibit "D." Moreover, Mr. Karpel, who was then Vice President of A&E, and performed the interviews for the director position, found that Mr. Abneri had "demonstrated the ability to direct large Capital Improvement programs," while plaintiff had not demonstrated any such skills. See Interview Summary Form, Exhibit "G.;" Interview Form, Exhibit "F." Mr. Karpel further observed that "[c]oupled with his technical background [Mr. Abneri] stands out in a field of many qualified candidates. He is intelligent, can communicate and report clearly, and works well in stressful situations. I am sure he will bring clear, strong direction to the CIP programs." See Interview Summary Form, Exhibit "G." Mr. Abneri's much greater experience with SCA and with management at SCA, as well as his excellent performance evaluations provide ample evidence that SCA promoted him instead of plaintiff for legitimate, non-discriminatory reasons.

As articulated above, SCA did not fill the Managing Architect B position due to the reorganization, and therefore, its decision not to promote plaintiff to this position was for legitimate business reasons. See Press Release, Exhibit "N," Employee Action Form, Exhibit

"O," showing that no candidate was selected; and Defendant's Verified Response to Plaintiff's Interrogatory No. 2, Exhibit "P."

**G.      Legitimate, Non-Discriminatory Reasons - Plaintiff's Termination**

As explained above, plaintiff was laid-off as part of a large-scale reorganization of the SCA.  An RIF is a legitimate non-discriminatory reason for a termination.  See Campbell v. Home Depot U.S.A., Inc., 2006 U.S. Dist. LEXIS 14958 at * 43 (S.D.N.Y. March 30, 2006). Following Mayor Bloomberg and Chancellor Klein's direction, the President of the SCA instructed the Vice President of each department to reduce personnel by about 50%.  See Defendant's Verified Response to Plaintiff's Interrogatory No. 4, Exhibit "P."  The A&E division laid off a total of 77 of 165 employees between February, and August, 2003.  See Barrett Declaration ¶ 3; Memorandum to A&E Staff from Vice President of A&E Bruce Barrett, Exhibit "R."  Of these 77 laid off employees, 15, including plaintiff, were in managerial and other titles not represented by a union and 62 were in union represented titles.  See Barrett Declaration at ¶ 4

The Vice President of A&E considered the future needs of a downsized SCA when determining which individuals should be let go.  The elimination of positions and the layoffs were based on future needs of a downsized SCA.  Vice President Barrett generally considered an employee's type of technical and management experience, knowledge of and experience with the SCA technical design standards, and seniority when deciding whom should be laid off.  See Barrett Declaration at ¶ 3.  Plaintiff was responsible for the administrative coordination of projects designed by in-house technical staff.  Plaintiff was not responsible for supervising and managing consultant contracts, nor was he responsible for supervising and reviewing the work of the technical staff.  With the drastic reduction of in-house personnel, plaintiff was less needed than those who supervised the technical staff or managed consultant

contracts.  See Barrett Declaration at ¶ 5; See Plaintiff's Dep., Exhibit "B," at 56:10-57:4; Job Description for In-House Program Design Manager, pgs. 8 and 9 of plaintiff's performance evaluation, Exhibit "D."

Moreover, plaintiff had only two years of experience at SCA at the time of the layoffs.  Each of the employees retained in his title, had more experience than plaintiff.  Mr. Friedman had worked for SCA for approximately 12 years; Mr. Falcone for 10; Mr. Mittleman for 6; and Mr. Elberfeld and Mr. Huhlewych each for 3 years.  See 56.1 Statement ¶ 36; Performance Evaluations, Exhibits "V," "W," "X," "Y," and "Z."   Thus, defendant has articulated a legitimate, non-discriminatory reason for plaintiff's termination.

## H.    Legitimate, Non-Discriminatory Reasons - Failure to Re-Hire Claims

As demonstrated above, plaintiff did not apply for the Manager Level A (Engineer or Architect), position, Posting Number 0537-489, posted on February 15, 2005.  See Job Posting, Exhibit "AA;" Plaintiff's Dep., Exhibit "B," at 122:9-123:1; Roster of Candidates Responding to Posting, Exhibit "BB."  This was the only posting for a position in plaintiff's title since the layoffs.  See Defendant's Verified Response to Plaintiff's Interrogatory No. 7, Exhibit "P."  Therefore, it was legitimate that SCA did not hire him for this position.

Plaintiff has not shown that the employees of the temporary agencies and consulting firms are somehow the employees of the SCA.  Therefore, he has not shown that SCA has taken any adverse action against him by the alleged failure to hire him to work for those temporary agencies and consulting firms.  Even if plaintiff could demonstrate that the SCA did take an adverse employment action against him, and if he could demonstrate that the failure to hire might have some causal connection to plaintiff's age or national origin, this claim would still have to be dismissed because the SCA has a legitimate business reason for not seeking plaintiff's services.  Since the 2003 RIF, the SCA has not requested from these consulting firms and

temporary employment agencies individuals to perform the type of services that plaintiff was performing, namely administrative coordination of in-house design.   As a result of the reorganization, the management of in-house projects has been streamlined and the duties of this position have been absorbed by others. See Barrett Declaration ¶ 10.  SCA did not need the type of services which plaintiff performed for SCA prior to the RIF, and therefore, it is legitimate and rational that it did not contract for them.

## I.   Plaintiff Cannot Show Pretext

Given the fact that plaintiff cannot even establish a *prima facie* discriminatory failure to promote, termination, or failure to re-hire claim, and given the absence of evidence proffered by plaintiff that defendant discriminated against him because of his race, national origin, or age, the only conclusion that a reasonable jury could reach is that the reasons offered by defendant for not promoting or re-hiring plaintiff and for terminating plaintiff during the RIF are true. See See Manessis v. New York City Dept. of Transp., 2003 U.S. Dist. LEXIS 1921, at *28 (S.D.N.Y. Feb. 10, 2003), aff'd in an unreported decision, 2004 U.S. App. LEXIS 1579 (2d Cir. Feb. 3, 2004)("[where] there is insufficient evidence in the record to establish a *prima facie* case, there is nothing in the record to rebut defendants' proffered nondiscriminatory reason.").

Defendant has met its burden of setting forth legitimate business reasons for the employment actions taken against plaintiff, and plaintiff cannot demonstrate that defendant's reasons are pretextual.  Accordingly, since defendant has articulated legitimate business reasons for its actions, the burden then shifts back to plaintiff to prove that the proffered reasons are a pretext for discrimination.  That is, that defendant's proffered reasons were both false and also a pretext, or cover, for discrimination, and not the real reason for defendant's decisions.  See Hollander v. Am. Cyanamid C., 172 F.3d 192, 201 (2d Cir. 1999), cert. denied, 528 U.S. 965 (1999); Malatesta v. Credit Lyonnais, 2005 U.S. Dist. LEXIS 30334, at *20-21 (S.D.N.Y. Nov.

- 15 -

21, 2005).  On this record, plaintiff can point to nothing that shows that defendant's actions were motivated by discriminatory animus.  See Alleyne v. Four Seasons Hotel - N.Y., 2001 U.S. Dist. LEXIS 1503, at *51 (S.D.N.Y. Feb. 12, 2001)("The plaintiff points to no other derogatory statements made by decision-makers, or any other evidence of discrimination or racial animus by decision-makers . . . "), aff'd, 2002 U.S. App. LEXIS 1476 (2d. Cir. Jan. 23, 2002).  As stated in Point II(C) and (D), above, plaintiff admitted that he never heard anyone at SCA derogatory remarks with regard to his race, age or national origin.  See Plaintiff's Dep., Exhibit "B," at 78:11-79:1; 106:3-13.

All that plaintiff can offer in response to defendant's legitimate business reasons are self-serving, conclusory allegations.  Such allegations are insufficient, as a matter of law, to bring plaintiff's case to a jury.  See Gorham v. Transit Workers Union Local 100, 1999 U.S. Dist. LEXIS 3573, *12 (S.D.N.Y. Mar. 22, 1999), aff'd without published opinion, 205 F.3d 1322 (2d Cir.), cert. denied, 531 U.S. 884 (2000).  As the Second Circuit has observed:

> Everyone can be characterized by sex, race, ethnicity, or (real or perceived) disability; and many bosses are harsh, unjust, and rude. . . . It is therefore important in [alleged discrimination] . . . cases to exclude from consideration personnel decisions that lack a linkage or correlation to the claimed ground of discrimination. Otherwise, the federal courts will become a court of personnel appeals.

Alfano v. Costello, 294 F.3d 365, 377 (2d Cir. 2002).

Plaintiff does not even identify any individual that should have been laid off in his place, but simply makes conclusory allegations that he was the most qualified person for any remaining manager position at SCA.  See Plaintiff's Dep., Exhibit "B," at 99:10-20; 100:8-13; 106:3-13.  However, "[w]here an employer's explanation, offered in clear and specific terms, 'is reasonably attributable to an honest even though partially subjective evaluation of . . .

qualifications, no inference of discrimination can be drawn.'" <u>Byrnie v. Town of Cromwell Bd.</u> <u>of Educ.</u>, 243 F.3d 93, 105 (2d Cir. 2001)(quoting <u>Lieberman v. Gant</u>, 630 F.2d 60, 67 (2d Cir. 1980)).

Furthermore, it must be noted that

> [Title VII] only obligates Defendant to base their actions on non-discriminatory considerations. <u>See</u> <u>Gilman v. Runyon</u>, 865 F.Supp. 188, 193 (S.D.N.Y. 1994)("an 'employer's judgment in selecting and applying subjective criteria may be poor, and it may be erroneous' as long as it is not discriminatory")(quoting <u>Judge v. Marsh</u>, 649 F.Supp. 770, 781 (D.D.C. 1986)); <u>Williams v.</u> <u>N.Y.C. Dep't of Sanitation</u>, 2001 U.S. Dist. LEXIS 15594, 2001 WL 1154627, at *18 (S.D.N.Y. Sept. 28, 2001)("This Court may not second-guess an employer's non-discriminatory business decisions, regardless of their wisdom."); <u>Faldetta v. Lockheed</u> <u>Martin Corp.</u>, 2000 U.S. Dist. LEXIS 16216, 2000 WL 1682759, at *9-10 (S.D.N.Y. Nov. 9, 2000)("Absent evidence of discrimination, it is not the province of the Court to sit as a super-personnel department that reexamines an entity's business decisions.").

<u>Sarmiento v. Queens College</u>, 2005 U.S. Dist. LEXIS 6117, at *20-21 (E.D.N.Y.), <u>aff'd</u>, 2005 U.S. App. LEXIS 23412 (2005).  Plaintiff simply claims that he was a good employee and should not have been laid off.  This subjective plaint does not create a federal case.  In short, plaintiff's cry of "anyone but me" cannot suffice to defeat a summary judgment in this intentional discrimination case.

Moreover, plaintiff has failed to offer any evidence that defendant's reasons are false. <u>St. Mary's Honor Ctr.</u>, 509 U.S. at 515 ("a reason cannot be proved to be 'a pretext *for discrimination*' unless it is shown *both* that the reason was false, *and* that discrimination was the real reason.")(emphasis in original).  Accordingly, plaintiff has failed to prove that defendant's

proffered reasons are pretexts for discrimination.  See Woodman, 411 F.3d at 76 (2d Cir. 2005).

This is an end to this case and it must be dismissed.

## POINT III

## PLAINTIFF'S RETALIATION CLAIM IS INSUFFICIENT AS A MATTER OF LAW AND MUST BE DISMISSED

As noted above, plaintiff did not allege a retaliation claim in either his EEOC charge or his federal complaint, but he may have been attempting to raise one in his deposition. Plaintiff claims that SCA will not re-hire him because he decided to fight for his rights and sue the SCA. See Plaintiff's Dep., Exhibit "B," at 118:15-22. Assuming, *arguendo*, that this Court has subject matter jurisdiction and that such claims are properly before the Court, there is no merit to them in any event.

Retaliation claims under Title VII are examined under a three-step burden shifting analysis that is a variant of the McDonnell Douglas framework. See Quinn v. Green Tree Credit Corp., 159 F.3d 759, 768 (2d Cir. 1998)(citations omitted). To establish a prima facie case of retaliation under Title VII or the ADEA, a plaintiff must show "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) he suffered an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." McMenemy v. City of Rochester, 241 F. 3d 279, 282-83 (2d Cir. 2001).

Defendant has explained in Point II(E) and (H), above, plaintiff that has not identified any position to which he applied or for which he has not been hired. Therefore his retaliation claim must be dismissed. See Petrosino v. Bell Atlantic, 385 F.3d 210; Dow v. West, 2002 Dist. LEXIS 16772 at *12. Furthermore, employees of temporary agencies and consultant firms are not employees of the SCA and therefore, even if temporary agencies and consulting firms have not hired plaintiff, SCA has not taken an adverse employment action against him.

Even if plaintiff could establish an adverse action, he cannot establish a causal connection. Plaintiff offers no evidence of retaliation and therefore relies simply on temporal

proximity.    While proximity between the protected activity and an adverse action can be sufficient to establish a causal connection, in order for it to do so, the intervening period must be "very close." Clark County School District v. Breeden, 532 U.S. 268, 273 (2001); Zenni v. Hard Rock Cafe Int'l, 903 F. Supp. 644, 656 (S.D.N.Y. 1995)(1 year not temporal proximity).  Indeed, the Second Circuit has held that a lapse of three to four months is too long of a period to establish a causal connection. See Hollander v. American Cyanamid Co., 895 F.2d 80, 85 (2d Cir. 1990).

Plaintiff cannot establish temporal proximity with respect to the protected activity of filing an EEOC charge and any adverse action.  Plaintiff filed the charge with the EEOC on August 27, 2003.  See Exhibit "CC."  Defendant did not even begin to contract with consulting firms for temporary services until December, 2003, or with temporary employment agencies until June, 2004, eight and fourteen months after plaintiff filed his EEOC charge, respectively. See Barrett Declaration at ¶ 6.  Furthermore, SCA did not even post for the Managing Architect A position until February 15, 2005.  See Exhibit "AA."   Therefore, too much time elapsed between the alleged protected activity and the adverse action of not hiring plaintiff for the Managing Architect A position to establish a temporal proximity with respect to his EEOC filing.

Plaintiff filed his federal complaint on August 4, 2004.  See Exhibit "A."  Plaintiff does not pin-point any time that he actually applied for a position at a temporary agency or consulting firm, nor does he even name any of these firms or agencies.  See Plaintiff's Dep., Exhibit "B," at 107: 2-9; 119: 11-21.[5]   Because he cannot pinpoint this time, he cannot

---

[5] It should be noted that plaintiff had an opportunity to review his transcript, make corrections, and to fill in any information which he had forgotten at the time of the deposition.

demonstrate temporal proximity.  In addition, more than 7 months elapsed between the filing of the federal complaint and the hiring for the Managing Architect A position, again, too long of a period to establish a temporal proximity.

The same analytical framework that applies to plaintiff's discrimination claims applies to his retaliation claim; in other words, if plaintiff establishes a prima facie case, defendant may offer a legitimate business reason, and the plaintiff may then offer evidence that the reason was a pretext for discrimination.  See Holtz v. Rockefeller, 258 F. 3d 62, 81 (2d Cir. 2001).  Even if plaintiff were able to establish a prima facie case of retaliation, defendant has articulated a legitimate reason, and plaintiff has offered no evidence to show pretext.  As explained in Point III, subpart D3 above, SCA has not contracted for services of the type which plaintiff was performing in his position, nor did plaintiff apply for the Managing Architect A position at SCA.

No rational trier of fact could conclude that plaintiff has met his burden of persuasion, and therefore, his retaliation claim must be dismissed.

## CONCLUSION

**WHEREFORE,** defendant respectfully requests that its summary judgment motion be granted, that the complaint be dismissed in its entirety, that judgment be entered for defendant and that the Court grant defendant costs, fees, and disbursements together with such other and further relief as the Court deems just and proper.

Dated:  New York, New York
July 28, 2006

MICHAEL A. CARDOZO
Corporation Counsel of the
City of New York
Attorney for Defendant
100 Church Street, Room 2-317
New York, New York 10007
(212) 788-0879

By:  _____
Joanna Helferich (JH-2828)
Assistant Corporation Counsel

**ALAN M. SCHLESINGER**
**JOANNA HELFERICH,**
Of Counsel

## CERTIFICATE OF SERVICE

On July 28, 2006, I caused a true and correct copy of Defendant's Memorandum

of Law in Support of its Motion for Summary Judgment to be served upon plaintiff addressed to

**KARAN GUPTA**
209 Cordial Road
Yorktown Heights, NY 10598

by first class mail by causing a copy of same to be deposited in a prepaid envelope, addressed to

the above-mentioned address and placing that envelope in a depository under the exclusive care

and control of the United States Postal Service.

Dated:      New York, New York
            July 28, 2006

                                    _____
                                    Joanna R. Helferich
                                    (JH2828)