04-CV-2896 (NGG) (LB)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

KAREN GUPTA,

                                        Plaintiff,

                    -against-

NEW YORK CITY SCHOOL CONSTRUCTION
AUTHORITY,

                                        Defendant.

**DEFENDANT'S REPLY MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION FOR SUMMARY
JUDGMENT**

# MICHAEL A. CARDOZO

*Corporation Counsel of the City of New York*
Attorney for Defendant
100 Church Street, Room 2-107
New York, N.Y.  10007-2601

Of Counsel:    Joanna Helferich

Tel:        (212) 788-0879

NYCLIS No.: 04 LE 000256

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................. 1

STATEMENT OF FACTS ..................................................................... 1

ARGUMENT ................................................................................ 1

       DEFENDANT'S   MOTION   FOR   SUMMARY
       JUDGMENT SHOULD BE GRANTED. .................................. 1

       A.   Facts ............................................................. 1

       B.   Subject Matter Jurisdiction. ................................. 3

       C.   Time Bar ........................................................ 3

       D.   Failure To promote - *Prima Facie* Case And
           Pretext ......................................................... 4

       E.   Plaintiff's Termination - *Prima Facie* Case
           And Pretext .................................................... 5

       F.   Failure to Re-Hire and Retaliation Claims --
           *Prima Facie* Case And Pretext ........................... 9

CONCLUSION .............................................................................. 10

## PRELIMINARY STATEMENT

Plaintiff, a former Managing Architect A at the School Construction Authority ("SCA"), was terminated as part of a reduction in force ("RIF") that saw nearly 50% of all SCA employees laid off.   He has not offered any evidence in support of his claims that SCA discriminated or retaliated against him.   He offers only unsworn statements, inadmissible evidence, and conclusory allegations.   Plaintiff has failed to controvert defendant's Rule 56.1 Statement of Undisputed Facts, and those facts are deemed admitted.   Therefore, defendant's motion for summary judgment must be granted.

## STATEMENT OF FACTS

The Court is respectfully referred to defendant's Statement of Undisputed Facts Under Local Civil Rule 56.1, dated July 28, 2006 ("56.1 Statement"); the Declaration of Joanna Helferich, dated July 28, 2006 ("Helferich Decl.") and the supporting evidence cited to therein; and the two Declarations of E. Bruce Barrett, dated July 28, 2006, and October 20, 2006. All references to "Exhibits" are to the exhibits annexed to the Helferich Decl.

## ARGUMENT

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT SHOULD BE GRANTED.

**A.     Facts**

Plaintiff did not submit a statement in opposition to defendant's Statement of Undisputed Facts, as required by Local Rule 56.1(b) and, thus, those facts should be deemed admitted.   Le Prevost v. New York State, 2006 U.S. Dist. LEXIS 73977 at *15 (S.D.N.Y. 2006)(citing Gubitosi v. Kapica, 154 F.3d 30, 31, n.1 (2d Cir. 1998).   To the extent that plaintiff disputes the facts in defendant's 56.1 Statement in his twelve page opposition statement, he fails

to submit any admissible evidence in support of his allegations.  Rule 56(e).  Plaintiff appears to challenge only a handful of the Rule 56.1's facts:

- ¶ 23: Plaintiff alleges that SCA filled the Managing Architect B position by giving the job duties to Mr. Falcone.  There is no citation to any admissible evidence and no showing of personal knowledge by Mr. Gupta.  Even assuming this were true, Mr. Falcone did not receive any change in title or in salary, and plaintiff therefore cannot establish an adverse employment action.  Moreover, Mr. Falcone had much more experience at SCA than plaintiff.

- ¶ 29: Plaintiff alleges, again without admissible evidence, that seniority was not a factor in determining who would be laid-off in SCA's Architecture and Engineering Division ("A&E").  Plaintiff's statement that the EEOC told him seniority was not a factor is inadmissible hearsay and is easily refuted, as explained section E below.

- ¶ 35: Plaintiff claims, again without admissible evidence, that additional managers in his title, Mr. Patel and Ms. Del Prado, were retained.  This is factually incorrect.  These managers were not in plaintiff title, and, unlike plaintiff, they were responsible for supervising and managing consultant contracts.  They also had more experience at SCA than plaintiff.  Thus, they are not similarly situated to plaintiff.  See Second Barrett Decl. at ¶¶ 7, 8.

- ¶ 40: Plaintiff appears to dispute defendant's assertion that the SCA does not control the temporary employment agencies.  Plaintiff's sole citation in support of his position is an email from someone at a temporary agency.  This document is inadmissible hearsay.  Moreover, it does not contradict defendant's assertion.

Plaintiff's failure to contradict the Rule 56.1 except by inadmissible speculations, conclusions, and hearsay is fatal to plaintiff's opposition to the summary judgment motion.

American Automobile Ass'n v. AAA Automobile Club of Queens, Inc., 1999 U.S. Dist. LEXIS 8892 at *7-8 (S.D.N.Y. 1999).

**B.      Subject Matter Jurisdiction.**

When plaintiff filed his only charge with the EEOC, he alleged only national origin and age discrimination.  He did not allege "race" to the EEOC, and all Title VII claims based on race must be dismissed.  See Defendant's Memorandum of Law, dated July 28, 2006, ("D's MOL") Point I(A).  Plaintiff's assertion that race claims are "so similar," to national origin claims must be rejected..  See St. Francis College v. Al-Khazraji, 481 U.S. 604 (1987)(§ 1981 prohibits discrimination based on race but not national origin).

Furthermore, plaintiff's failure to re-hire claims, based on age, race, or national origin discrimination, must be dismissed because they were not alleged in the EEOC charge, and they are not reasonably related to the allegations in that charge.[1]  See D's MOL Point I(A).

**C.      Time Bar**

Plaintiff filed his EEOC charge on August 27, 2003, and therefore all claims accruing prior to October 31, 2002, 300 days before the EEOC filing, are time-barred.  See D's MOL Point I(B).  Plaintiff's failure to promote claim concerning the promotion of Mr. Abneri to a Director title on October 1, 2002, is time-barred.  D's MOL, Point I(B); see National Railroad Passenger. ("AMTRAK") v. Morgan, 536 U.S. 101, 113-114 (2002)(discrete acts include failure to promote – not a continuing violation).  Plaintiff argues that the claim is not time-barred because he had no way of knowing whether or not he had been discriminated against until after Mr. Abneri had been in the position for "a while."  Plaintiff does not claim tolling or extension of

---

[1]     Defendant does not dispute that the Court has subject matter over plaintiff's claim that the failure to re-hire was in retaliation for the filing of EEOC charge.

the limitations period and does not show any reason for variation of the law concerning when claims accrue. <u>Irwin v. Dept of Veterans Affairs</u>, 498 U.S. 89, 94-96 (1990); <u>South v. Saab Cars USA</u>, 28 F.3d 9 (2d Cir. 1994). On October 1, 2002, plaintiff knew that he had not been chosen for the job and that Mr. Abneri had been chosen instead. Thus, it is on that date that the claim accrued, and this claim is time-barred under Title VII. Plaintiff offers no explanation for why observing Mr. Aberni in the position led him to conclude that he was not promoted based on discriminatory animus. In any event, additional facts supporting a claim are not determinative of when the claim accrues.

**D.      Failure To promote - _Prima Facie_ Case And Pretext**

Assuming, <u>arguendo</u>, that plaintiff's claim for failure to promote him to the Director position were not time-barred, plaintiff still has not offered any evidence, either in his deposition or opposition papers, to support an inference of discrimination. <u>See</u> D's MOL Point II(C). He simply asserts that Mr. Karpel's observation that plaintiff had "limited opportunity to demonstrate management skills" was false and therefore shows discriminatory bias. Such conclusory allegations are not sufficient to establish an inference of discrimination. <u>See id</u>.

Even if plaintiff were able to make a _prima facie_ case of discrimination, he cannot show that defendant's non-discriminatory reasons for its decision to promote Mr. Abneri are pretextual. At the time of the interviews, Mr. Abneri had 12 years of experience at SCA, six years of which were in a managerial position, nine "Outstanding" and two "Very Good" performance evaluations, and he was promoted twice. <u>See</u> D's MOL, Point II(F). Plaintiff had less than 2 years experience at SCA at the time of the interview and he had not received any "Outstanding" performance evaluations. Plaintiff's opposition does not show that "no reasonable person exercising impartial judgment could possibly have chosen the promotee over

- 4 -

plaintiff ...." <u>See</u> <u>Byrnie v. Town of Cromwell Bd. of Educ.</u>, 243 F.3d 93, 103 (2d Cir. 2001). Thus, the failure to promote claim must be dismissed.[2]

        With respect to plaintiff's second failure to promote claim, to the position of Managing Architect B, posted on October 7, 2002, this too is time-barred. Moreover, plaintiff has not produced any evidence that the position was filled and, thus, cannot state a *prima facie* case. <u>See</u> D's MOL, Point II(C). Even if, as plaintiff alleges, Mr. Falcone was assigned the tasks of a person with the title Managing Architect B, he did not receive any change in title or increase in salary. Moreover, Mr. Falcone had 10 years of experience with SCA. Therefore, this claim must be dismissed.

**E.    Plaintiff's Termination - *Prima Facie* Case And Pretext**

        Plaintiff has yet to offer any evidence that suggests that his termination was a result of discrimination. <u>See</u> D's MOL, Point II(D) and (G). In his opposition papers, plaintiff simply asserts that other individuals with less experience and education were retained. He does not specify these individuals and he does not provide any basis for his speculations concerning their experience. Moreover, as explained above, even if plaintiff could demonstrate that these individuals did have less experience than he, he would have to demonstrate that no reasonable person could have chosen to retain them instead of him. <u>See</u> <u>Byrnie,</u> 243 F.3d at 103.

        On the contrary, all of the evidence in the record supports a finding that SCA's RIF and the layoffs in the A&E department were properly conducted. <u>See</u> D's MOL Point II(D). There were 10 individuals in the Managing Architect A title before the RIF and 5 were laid off -

---

[2]   Plaintiff claims that he could prove his case with a copy of the "Interview Question Sheet." As plaintiff was informed during discovery, no such document exists.

four white individuals and plaintiff.  Furthermore, two of the five who were retained were older than plaintiff, one at the age of 76.  See id.

Plaintiff attempts to spin the facts in a different light.  He claims that he was the only minority in the Managing Architect A position, and therefore, that 100% of minorities in that title were terminated, creating an inference of discrimination.  Plaintiff's theory would virtually require that any time there is only one minority employee in a small part of a company undergoing an RIF that employee would, as a matter of law, have to be retained.  This is clearly not the law and the purported statistic is not evidence of anything.

Plaintiff, for the first time, seems to suggest that two individuals, Vinubhai Patel and Aileen Del Prado, are also appropriate comparators.  These individuals, however, have the title Managing Engineer, Level A, not Managing Architect, Level A, and therefore, are not similarly situated to the plaintiff.  See List of SCA Employees as of September 17, 2003, Exhibit "L"; Shumway v. United Parcel Serv., 118 F.3d 60, 64 (2d Cir. 1997).  Moreover, both had more experience at SCA than plaintiff at the time of the layoffs (Patel had 13 years and Del Prado 4), and both had experience managing consulting contracts, which plaintiff did not.  See Barrett's Reply Decl. at ¶¶ 7, 8; Loucar v. Boston Mkt., 294 F. Supp. 2d 472, 479 (S.D.N.Y. 2003)(and cases cited therein)(employee with more experience not similarly situated to a less experienced employee even though both held same title).

Even if these individuals were similarly situated to plaintiff, by comparing himself with them, he hurts, rather than helps, his case.  Both individuals self-identify as "Asian," and Mr. Patel is Indian, just like plaintiff.  See Barrett's Reply Decl. at ¶ 8.  Moreover, Mr. Patel was 60 years old at the time of the RIF – 1 year younger than plaintiff.  See id. Plaintiff misleads the Court when he asserts that of the five managers in the CIP division,

including Mr. Patel and Ms. Del Prado, he was the only minority and the oldest.  See Plaintiff's Op. at 4, 7.  The first statement is blatantly false, and the second misleading in that plaintiff is less than a year older than Mr. Patel.  Plaintiff has produced no evidence to support an inference of discrimination with respect to his layoff, and therefore, this claim must be dismissed.

Plaintiff also cannot show pretext.  The elimination of positions and the layoffs were based on future needs of a downsized SCA.  Vice President Barrett generally considered an employee's type of technical and management experience, knowledge of and experience with the SCA technical design standards, and seniority when deciding whom should be laid off.  See Point II(G).  Plaintiff was responsible for coordinating in-house design projects, not for supervising and managing consultant contracts, or for supervising and reviewing the work of the technical staff.  With the drastic reduction of in-house personnel, plaintiff was less needed than those who supervised the technical staff or managed consultant contracts.  See id.  Moreover, plaintiff had less than two years of SCA experience at the time of the RIF.  Each of the employees retained in his title had more experience than plaintiff.  See id.

Plaintiff attempts to deflect from his deficiency in experience with SCA by baldly asserting that SCA did not consider seniority, despite sworn statements to the contrary.  As evidence of this contention, plaintiff refers to an EEOC letter to him finding no evidence of discrimination on the part of the SCA, which he submits with his opposition papers.  As an initial matter, the EEOC and the SCA are separate and distinct entities, and statements made by the EEOC are not binding upon the SCA, a point which plaintiff seems to misunderstand throughout his brief.  Moreover, the plain language of the EEOC's letter does not support plaintiff's claim.  The letter reads, "Further review of the evidence reveals that although the SCA was not *required* to consider seniority in making decisions regarding the layoff of managers, *all of the five*

*employees in your title who were not laid off have been with the SCA longer than you.*"
(emphasis added). The EEOC statement merely first stated SCA's legal obligation (which did
not require a seniority factor) and noted that the experience levels of the retained managers was a
sufficient legitimate nondiscriminatory reason for SCA's RIF decisions. This conclusion
supports defendant here.

Plaintiff also disagrees with SCA's decision that it needed individuals with
experience managing consultant contracts, as opposed to those who coordinated in-house
projects. One moment plaintiff asserts that managing in-house staff is the same as managing
consulting contracts, and the next, he claims that it was actually more difficult and challenging to
handle in-house staff. At the end of the day, plaintiff does not contradict defendant's assertions
that plaintiff worked only on in-house projects and did not have experience managing consulting
contracts. Nor does he produce evidence that SCA's view that the two types of work differed
from each other was false or a pretext for discrimination. See Point II(G); Thornley v. Penton
Publishing, 104 F.3d 26, 29 (2d Cir. 1997)(employer has the right to determine job criteria).
Moreover, plaintiff's claim that the coordination of in-house design projects and the management
of consulting contracts are equivalent job responsibilities is simply false. See Barrett's Second
Decl. at ¶¶ 2-5. All of the individuals retained in plaintiff's title, Mssrs. Elberfeld, Falcone,
Friedman, Huhlewych, and Mittleman, had experience managing consulting contracts. Mr. Patel
and Ms. Del Prado were also responsible for managing consulting contracts. See Barrett's Reply
Decl. at ¶¶ 6-7.

Plaintiff argues that defendant could not assign him to work on in-house projects
and then lay him off based on his lack of experience with managing consulting projects. Plaintiff
has not alleged anywhere in this litigation that the assignment was discriminatory. Nor does he

show that SCA's criteria for the elimination of positions based, in part, on seniority and experience managing consulting contracts, was false or a pretext for discrimination. It need only be added that plaintiff's subjective view of his capabilities does not bind the employer and there is no implication of discriminatory animus where, as here, actual experience is preferred over subjective belief of capability. This is an end to plaintiff's argument, and therefore, his claim must be dismissed.

**F.     Failure to Re-Hire and Retaliation Claims -- *Prima Facie* Case And Pretext**

Plaintiff admits that he did not apply to the Managing Architect A position posted by SCA on February 15, 2005, and therefore, his failure to re-hire claim with respect to that position must be dismissed. <u>See</u> Plaintiff's Opposition at 8, 10; <u>Petrosino v. Bell Atlantic</u>, 385 F.3d 210 (2d Cir. 2004)(quoting <u>Brown v. Coach Stores</u>, 163 F.3d at 710); <u>Dow v. West</u>, 2002 Dist. LEXIS 16772 at *12 (W.D.N.Y., August 16, 2002). Plaintiff asks the court to overlook this deficiency on the basis of an allegation that he telephoned Mr. Abneri and told him he wanted his job back. He claims that the fact that SCA re-hired someone in his title when they knew he wanted his job back proves retaliation. Even taking plaintiff's allegation that Mr. Abneri knew he wanted his job back as true, however, plaintiff is far from establishing his burden of proof. SCA could not be expected to telephone each employee it had laid off and believed might have an interest in the Managing Architect A position. Rather than given an unfair advantage to any past employee, SCA posted the position as required. <u>See</u> D's MOL, Point II(E). Plaintiff claims that he was discouraged from applying to the position because the EEOC told him that SCA would not hire him back. This, of course, is not only patent hearsay and inadmissible but, also, an EEOC statement cannot bind SCA. Moreover, plaintiff does not challenge Mr. Liarikos' competence and qualifications for the post RIF job. Mr. Liarikos, who began working for the SCA in 1990, had 13 years of experience at the time of the RIF and had experience managing

consulting contracts at SCA.  See List of SCA employees, Exhibit "Q"; Barrett's Reply Decl. at ¶ 6.  Plaintiff had less experience and none of the right kind of experience, and Mr. Liriakos's selection could not, therefore, be termed discriminatory.

Plaintiff has not offered any admissible evidence to demonstrate that employees of temporary agencies and consulting firms are employees of SCA or that SCA controls the hiring of these firm.  See id.  He simply points to an email sent to him by someone at one of the temporary agencies that said "NYCSCA doesn't take back consultants." This statement is hearsay, was not made by SCA, and does not demonstrate that SCA controls hiring at temporary agencies.  For example, the temporary employment agencies perform initial screenings and reference checks before sending resumes to SCA for consideration.  See Barrett Decl. at ¶ 9.  Perhaps the temporary agency performed this screening and did not consider plaintiff to be a viable candidate for placement at SCA, prompting this email.  Plaintiff has not demonstrated that he has suffered an adverse employment action at the hands of the SCA or any discriminatory animus on the part of SCA, and therefore, this claim must be dismissed.

Moreover, plaintiff has not established pretext.  Since the 2003 RIF, the SCA has not requested from these consulting firms and temporary employment agencies individuals to perform the type of services that plaintiff was performing, namely administrative coordination of in-house design.  See Barrett Declaration ¶ 10.  Plaintiff has offered no evidence to contradict this assertion.

## CONCLUSION

**WHEREFORE,** defendant respectfully requests that its summary judgment motion be granted, that the complaint be dismissed in its entirety, that judgment be entered for

defendant and that the Court grant defendant costs, fees, and disbursements together with such other and further relief as the Court deems just and proper.

Dated:     New York, New York
           October 20, 2006

                              **MICHAEL A. CARDOZO**
                              Corporation Counsel of the
                               City of New York
                              Attorney for Defendant
                              100 Church Street, Room 2-317
                              New York, New York 10007
                              (212) 788-0879

                    By:     _____
                              Joanna R. Helferich (JH-2828)
                              Assistant Corporation Counsel


**ALAN M. SCHLESINGER**
**JOANNA HELFERICH,**
   Of Counsel

## CERTIFICATE OF SERVICE

On October 20, 2006, I caused a true and correct copy of Defendant's Memorandum of Law in Support of its Motion for Summary Judgment to be served upon plaintiff addressed to

**KARAN GUPTA**
209 Cordial Road
Yorktown Heights, NY 10598

by first class mail by causing a copy of same to be deposited in a prepaid envelope, addressed to the above-mentioned address and placing that envelope in a depository under the exclusive care and control of the United States Postal Service.

Dated:        New York, New York
              October 20, 2006

                                        _____
                                        Joanna R. Helferich
                                        (JH2828)