FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT, E.D.N.Y.
★ ... 15 2007 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X

KAREN GUPTA,

                Plaintiff,

-against-

NEW YORK CITY SCHOOL
CONSTRUCTION AUTHORITY,

                Defendant.
-------------------------------------------------------X

**REPORT AND RECOMMENDATION**
**04 CV 2898 (NGG) (LB)**

**BLOOM, United States Magistrate Judge:**

       Plaintiff brings this *pro se* action alleging that defendant discriminated against him by failing to promote him, terminating him and failing to re-hire him on the basis of his race, national origin and age in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* and the Age Discrimination in Employment Act, as amended, 29 U.S.C. §§ 621 *et seq.* Defendant moves for summary judgment under Fed. R. Civ. P. 56.[1] The Honorable Nicholas G. Garaufis referred defendant's motion to me for a Report and Recommendation in accordance with 28 U.S.C. § 636(b). For the following reasons, it is respectfully recommended that defendant's motion should be granted and plaintiff's complaint should be dismissed.

---

[1] Defendant provided plaintiff with the requisite Local Civil Rule 56.2 notice.

## BACKGROUND[2]

Plaintiff was born in India on February 1, 1941 and is of Asian Indian descent. Plaintiff's Complaint, (Exhibit "A") at ¶ 7; Plaintiff's Deposition, (Exhibit "B") at 8-10. The School Construction Authority ("SCA") is an authority separate and apart from the Board of Education of New York. Defendant's Statement Pursuant to Local Civil Rule 56.1 ("**Rule 56.1 Statement**") ¶¶ 4-5. The SCA oversees the construction of new public schools and manages the design, construction and renovation of capital projects in New York City's more than 1,200 public school buildings. Id.; Declaration of E. Bruce Barrett, Vice President of Architecture and Engineering at the SCA ("Barrett Decl.") at ¶ 1.

Plaintiff was employed by the School Construction Authority from March 26, 2001 until April 25, 2003, when he was terminated as part of a reduction in force ("**RIF**") that resulted in a decrease in staffing levels by nearly 50%. Rule 56.1 Statement at ¶ 3. At the time of his termination, plaintiff held the title of Managing Architect, Level A, within the Architecture and Engineering ("A & E") department of the SCA. Rule 56.1 Statement at ¶ 7; Plaintiff's Performance Evaluation, Exhibit "D".

**Failure to Promote**

Plaintiff's complaint alleges that he "applied for higher positions twice [before the RIF] but could not get any promotion." Plaintiff's Complaint at ¶ 8. The first position plaintiff applied for was a vacancy announced on July 19, 2002, for the position of Director, Architecture & Engineering,

---

[2] Although plaintiff opposed defendant's motion, he did not file a 56.1(b) statement specifically contesting the facts in defendant's Rule 56.1 statement and as such, the Court may deem all the facts in defendant's Rule 56.1 statement admitted. See Loc. R. 56.1(c). Generally, a "plaintiff['s] failure to respond or contest the facts set forth by the defendants in their Rule 56.1 statement as being undisputed constitutes an admission of those facts, and those facts are accepted as being undisputed." Jessamy v. City of New Rochelle, 292 F. Supp. 2d 498, 504-05 (S.D.N.Y. 2003) (quoting NAS Elecs., Inc. V. Transtech Elecs. PTE Ltd., 262 F. Supp. 2d 134, 139 (S.D.N.Y. 2003)). However, given plaintiff's *pro se* status, the Court will deem admitted only those facts in defendant's Rule 56.1 statement that are supported by admissible evidence and not controverted by other admissible evidence in the record. See Jessamy, 292 F. Supp. 2d at 504.

2

Posting Number 0413-483. Rule 56.1 Statement ¶ 9; Exhibit "E". Nine candidates were interviewed for the position, including plaintiff, and on October 1, 2002, another candidate was selected for the position. Rule 56.1 Statement at ¶¶ 10-15; Exhibit "H". The second position plaintiff applied for was a vacancy announced on October 7, 2002, for the position of Managing Architect, Level B, Posting Number 0718-484. Rule 56.1 Statement at ¶ 21; Exhibit "M". However, this posted vacancy was withdrawn when the Mayor's press release announced the reorganization of the SCA on October 31, 2002. Id. at ¶ 23; Exhibits "N" & "O."

**Plaintiff's Termination/The Reduction in Force**

On October 31, 2002, Mayor Bloomberg and Chancellor Klein, in an effort "to significantly reduce the costs of school construction by having one agency accountable for school construction and renovations," announced a merger of the SCA with the construction functions of the DOE's Division of School Facilities. Barrett Decl. at ¶ 2; Exhibit "N." As part of the reorganization, the President of the SCA directed the Vice President of each department to reduce personnel by 50%. Rule 56.1 Statement ¶ 24; Exhibit "N." 362 out of approximately 900 employees were terminated by the reduction in force. See Rule 56.1 Statement at ¶ 26; List of SCA employees who were laid-off, resigned, or participated in a retirement incentive program as part of the reduction in force, ("RIF"), Exhibit "Q".

The Architecture and Engineering division where plaintiff worked laid off 77 of its 165 employees between February and August 2003. Rule 56.1 Statement ¶ 27; Barrett Decl. ¶¶ 3, 4; Exhibit "R". Plaintiff was laid off pursuant to the RIF effective April 25, 2003. Rule 56.1 Statement ¶¶ 28, 30; Barrett Decl. ¶ 5. Of the 77 employees who were laid off, 15 of these employees, including plaintiff, were in managerial positions and other titles not represented by a union and 62 employees were in union represented titles. Id. Plaintiff was 61 years old at the time he was laid off. See EEOC

Letter annexed to Plaintiff's Complaint.

The SCA performed a Disparate Impact Analysis to determine whether its layoff policy for SCA Managers would disparately impact any group by race, age or gender. The study showed an adverse impact rate for minorities of less than .80. See Disparate Impact Analysis, Exhibit "T." The adverse impact rate for older employees was above .80 at 1.36%. The study showed that the standard deviation between minorities and older employees slated to be laid off, compared to the majority groups, was well under two. Rule 56.1 Statement at ¶ 53; Exhibit "T". Plaintiff argues however that as he was the "most qualified hardworking, dedicated employee," his lay-off was based on race, national origin and age discrimination. See Plaintiff's Complaint at ¶ 8.

**Plaintiff's Retaliation Claims**

Plaintiff also makes two retaliation claims. First, plaintiff alleges that he was retaliated against when SCA did not rehire him when a position opened for a Manager Level A (Engineer or Architect), Posting Number 0537-489 on February 15, 2005. Second, plaintiff alleges that he was effectively "blackballed" by the consulting firms hired to work with the SCA because of his prior EEO activity. See Plaintiff's Deposition at 119, 122-23, Rule 56.1 Statement at ¶ 37.

Defendant argues that plaintiff never applied for the Manager Level A position in February 2005 (Engineer or Architect) and that the SCA has no control over who any consulting or temporary firm hires. In addition, defendant argues that it never requested services from consulting firms or temporary agencies for the type of services that plaintiff provided the SCA during his tenure. Rule 56.1 Statement ¶¶ 39-43.

**Procedural History**

On August 27, 2003, plaintiff filed a charge of employment discrimination based on national origin and age with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 172-2003-

4

01475. Rule 56.1 Statement at ¶ 47; Exhibit "CC". On May 28, 2004, the EEOC issued a right-to-sue letter. See EEOC Right to Sue, annexed to the Complaint, Exhibit "A". The EEOC found that plaintiff was laid off as part of a reduction in force during which employees of "different races and ages were also laid off." The EEOC further found that "although the SCA was not required to consider seniority in making decisions regarding the layoff of managers, all of the five employees in your title who were laid off have been with the SCA longer than you." Id. On August 4, 2004, plaintiff commenced this action pursuant to Title VII and the ADEA alleging that defendant discriminated against him on the basis of his race, national origin and age. Complaint ¶ 7. The parties conducted discovery. Defendant now moves for summary judgment and plaintiff opposes the motion.

## STANDARD OF REVIEW

A motion for summary judgment may be granted when a court "determines that there is no genuine issue of material fact to be tried." Savino v. City of New York, 331 F.3d 63, 71 (2d Cir. 2003) (citing Fed. R. Civ. P. 56(c) and Celotex Corp. V. Catrett, 477 U.S. 317 (1986)). "A genuine issue of material fact exists 'if the evidence is such that a reasonable juror could return a verdict for the nonmoving party.'" Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986)). "The trial court's function in deciding such a motion is not to weigh evidence or resolve issues of fact, but to decide instead whether, after resolving all ambiguities and drawing all inferences in favor of the non-moving party, a rational juror could find in favor of that party." Pinto v. Allstate Ins. Co., 221 F.3d 394, 398 (2d Cir. 2000).

"When a motion for summary judgment is made and supported . . ., an adverse party may not rest upon the mere allegations or denial of the adverse party's pleadings, but . . . must set forth

specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); see Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In other words the non-moving party must provide "affirmative evidence" from which a jury could return a verdict in its favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986). "Conclusory allegations, conjecture, and speculation . . . are insufficient to create a genuine issue of fact." Niagra Mohawk Power Corp. V. Jones Chemical, Inc., 315 F.3d 171, 175 (2d Cir. 2003) (quoting Kerzer v. Kingly Mfg., 156 F.3d 396, 400 (2d Cir. 1998). Moreover, "[t]he mere existence of a scintilla of evidence' supporting the non-movant's case is also insufficient to defeat summary judgment." Id. (quoting Anderson, 477 U.S. at 252).

Finally, "[w]here the non-moving party is proceeding *pro se*, the court must interpret that party's supporting papers liberally, that is, interpret them 'to raise the strongest possible arguments that they suggest.'" Forsyth v. Fed'n Empl. & Guidance Serv., 409 F.3d 565, 569 (2d Cir. 2005) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)).


## DISCUSSION

### 1. Plaintiff's Race Claim is Exhausted

Defendant argues that plaintiff's race based claim is not properly before this Court because plaintiff did not raise this claim in his EEOC complaint. Ordinarily, a plaintiff must exhaust his administrative remedies before bringing a Title VII suit. Deravin v. Kerik, 335 F.3d 195, 200 (2d Cir. 2003). A court may only entertain Title VII claims that were raised in or are reasonably related to the claims in the plaintiff's EEOC charge. Deravin, 335 F.3d at 200. This exhaustion requirement serves "to give the administrative agency the opportunity to investigate, mediate, and take remedial action," and

"enable[s] the EEOC to provide the alleged wrongdoer with notice and to permit possible conciliation." Fleming v. Verizon New York, Inc., 419 F. Supp. 2d 455, 457 (S.D.N.Y. 2005) (citations omitted).

The Second Circuit has recognized only three circumstances in which claims not alleged in an EEOC charge are sufficiently related to the charge to be asserted in a civil action: "[1] the claim would fall within the reasonably expected scope of an EEOC investigation of the charges of discrimination; [2] it alleges retaliation for filing the EEOC charge; or [3] the plaintiff 'alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge." Alfano v. Costello, 294 F.3d 365, 381 (2d Cir. 2002) (quoting Butts v. City of N.Y. Dep't of Hous. Preservation and Dev., 990 F.2d 1397, 1402-03 (2d Cir.1993)).

Defendant is correct that plaintiff failed to expressly allege race discrimination or "use terms suggestive of a potential confusion between the concepts of race and nationality." Deravin, 335 F.3d at 202.

> [However], because racial categories may overlap significantly with nationality or ethnicity, the line between discrimination on account of race and discrimination on account of national origin may be so thin as to be indiscernible, . . . or at least sufficiently blurred so that courts may infer that both types of discrimination would fall within the reasonable scope of the ensuing EEOC investigation for exhaustion purposes. . . . Where the line between national origin discrimination and racial discrimination is difficult to trace, courts have warned that an attempt to make such a demarcation before both parties have had the opportunity to offer evidence at trial is inappropriate. Id.

The Second Circuit has made clear that courts "should not attempt to draw overly fine distinctions between race and national origin claims." Id. at 202. This seems especially so in cases involving individuals of Asian Indian descent: "[i]n general, 'Asian Indian' is most commonly a characterization of both race and national origin, since it denotes someone with Asian racial characteristics whose ethnic background is Indian." Dixit v. City of New York Department of General

7

Services, 972 F. Supp. 730, 735 (S.D.N.Y. 1997) (cited with approval, Deravin, 335 F.3d at 202).

Here, plaintiff identifies himself as "Asian Indian" (Complaint at ¶ 7) and although plaintiff stated only that he was "Indian" (as opposed to "Asian Indian") in his EEOC complaint, the Court finds that the EEOC could be reasonably expected to investigate both racial and national origin bias because of plaintiff's Asian Indian descent. Plaintiff's race claim concerns conduct that would fall within the scope of the EEOC investigation and can reasonably be expected to pertain to the charge. In addition, plaintiff has stated:

> [a]s a lay person, representing himself when filing the EEOC questionnaire, I did not mark race because I assumed it was part of national origin. Having certain physical and noticeable characteristics of a South Asian, Pacific Islander is reasonably related to my national origin claim. My intention was to claim discrimination based on race and national origin.

Plaintiff's Opposition to Defendant's Motion for Summary Judgment ("Plaintiff's Opposition") at p. 2. The Circuit has found that representations made by a plaintiff as to why a particular claim was not brought before the EEOC are relevant to the ultimate determination of exhaustion. Deravin, 335 F.3d at 203. The Court finds that under the circumstances of this case, plaintiff's claim of race discrimination is exhausted.[3]

---

[3] Defendant initially argued that plaintiff's claim regarding defendant's failure to re-hire him is also unexhausted as it was not raised by plaintiff at the EEOC. In his opposition, plaintiff argued that he raised the failure to rehire as his retaliation claim against defendant. In its reply, defendant agreed with plaintiff stating "[d]efendant does not dispute that the Court has subject matter over plaintiff's claim that the failure to re-hire was in retaliation for the filing of [an] EEOC charge." Defendant's Reply Memorandum at 3, fn. 1. As such, the Court need not address the exhaustion of this claim.

## 2. Plaintiff's Promotion Claims

A claimant must file a charge of discrimination in New York within 300 days of the alleged discriminatory action. See 42 U.S.C. § 2000e-5(e)(1); 29 U.S.C. § 626; Tewksbury v. Ottaway Newspapers, 192 F. 3d 322 (2d Cir. 1999); Torrico v. International Business Machine Corp., 319 F. Supp. 2d 390, 401 (S.D.N.Y. 2004). This statutory requirement is analogous to a statute of limitations. Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 394 (1982).

On August 27, 2003, plaintiff filed a charge of employment discrimination with the EEOC; therefore, any claims allegedly occurring before October 31, 2002 are time-barred. Plaintiff interviewed for the position of Director of Architecture & Engineering, Posting Number 0413-483 on August 8, 2002 and the position was filled by another candidate on October 1, 2002. Plaintiff's argument that the 300 day requirement should be waived because "there was no way to know of the discrimination until after [the new candidate] was in the position for awhile . . ." is unavailing. Plaintiff's Opposition at p. 4. Plaintiff knew that he had not been chosen for the position on October 1, 2002, and that another candidate had been selected. As such, the 300 days began to run on this date. Because he was denied the first promotion beyond the 300 day look back period afforded under Title VII in New York, plaintiff's claims regarding this position should be dismissed as time-barred. Tewksbury, 192 F.3d at 331.

On October 7, 2002, SCA posted the position of Managing Architect, Level B, Posting Number 0718-484. On October 31, 2002, because of the reorganization of the SCA, the posted position vacancy was withdrawn. In order to establish a *prima facie* case of discrimination for failure to promote under Title VII, an employee must show that he or she "(1) is a member of a protected class; (2) was qualified for the position at issue; (3) was denied the position; and (4) that the

9

circumstances of the adverse employment decision give rise to an inference of discrimination." Mandell v. Count of Suffolk, 316 F.3d 368, 377 (2d Cir. 2003) (applying the framework set forth in McDonald Douglas Corp. v. Green, 411 U.S. 792 (1973)). Since SCA withdrew this posted vacancy after the reorganization of SCA was announced, plaintiff cannot establish a failure to promote based on this position as the posted vacancy was withdrawn and no one was selected for promotion. Therefore defendant's motion for summary judgment on this claim should be granted.

### 3. Plaintiff's Termination

Claims of age discrimination under the ADEA follow the same three-step analytical framework as race and national origin discrimination claims under Title VII as first established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Kessler v. Westchester County Dep't Social Services, 461 F.3d 199 (2d Cir. 2006) (holding that disparate impact is a substantive theory warranting the same treatment under the ADEA as under Title VII). Plaintiff has the burden at the outset of "proving by the preponderance of the evidence a *prima facie* case of discrimination." Texas Department of Community Affairs v. Burdine, 450 U.S. 248 (1981); Feingold v. New York, 366 F.3d 138, 152 (2d Cir. 2004).

To establish a *prima facie* case of discriminatory discharge, a plaintiff must show that (1) he belongs to a protected class; (2) he was performing his duties satisfactorily; (3) he was discharged; and (4) his discharge occurred under circumstances giving rise to an inference of discrimination on the basis of his membership in that class. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133 (2000); Feingold, 366 F.3d at 152. The Court recognizes that the evidence necessary to satisfy this initial burden is *de minimis*. Zimmerman v. Assocs. First Capital Corp., 251 F.3d 376, 381 (2d Cir. 2001).

There is no dispute that plaintiff satisfies elements one and three of his *prima facie* case: plaintiff is over 40, is of Asian Indian descent, and defendant terminated him. For the purposes of this report, the Court will assume, *ad arguendo*, that plaintiff also satisfied the second element of his *prima facie*

10

case: that plaintiff was performing his duties satisfactorily. However, for the reasons that follow, the Court finds that plaintiff has not offered any admissible evidence to satisfy the fourth element, namely that he was terminated under circumstances giving rise to an inference of discrimination based on his age, national origin or race.

**The Disparate Impact Analysis**

Plaintiff was laid off as part of a large-scale reorganization of the SCA, which was mandated by the mayor and resulted in a reduction in SCA's workforce by 362 employees. Defendant presents the statistical matrix utilized in SCA's reduction in force as proof that the layoffs were non-discriminatory and had no adverse disparate impact on members of a protected classes. "Statistical data may be admitted to show a disparity in outcome between groups, but to make out a *prima facie* case the statistical disparity must be sufficiently substantial to raise an inference of causation." Smith v. Xerox Corp., 196 F. 3d 358, 365 (2d Cir. 1999) (rev'd on other grounds, Mecham v. Knolls Atomic Power Lab., 461 F. 3d 134 (2d Cir. 1996)). Here, the statistical data presented by defendant undermines plaintiff's *prima facie* case.

In evaluating statistical evidence presented in disparate impact claims under Title VII and the ADEA, the Second Circuit has relied on two methods to measure disparities between groups. First, the Circuit has adopted the EEOC guideline that:

> A selection rate for any race, sex or ethnic group which is less than four-fifths (4/5) (or eighty percent) of the rate for the group with the highest rate will generally be regarded by Federal enforcement agencies as evidence of adverse impact, while a greater than four-fifths rate will generally not be regarded by Federal enforcement agencies as evidence of adverse impact. Smaller differences in selection rates may nevertheless constitute adverse impact, where they are significant in both statistical and practical terms . . .

Smith, 196 F.3d at 366 (quoting 29 C.F.R. § 1607 (1998)). As an alternative measure of differences

11

between groups, the Second Circuit has looked to whether a plaintiff can show a "statistically significant disparity of at least two standard deviation[]" points to warrant an inference of discrimination. Malave v. Potter, 320 F.3d 321, 327 (2d Cir. 2003) (quoting Smith, 196 F.3d at 365).

The SCA conducted a Disparate Impact Analysis ("DIA") to determine whether its layoff policy for SCA managers, such as plaintiff, would result in a disparity adversely impacting any particular group by race, age or gender. The study showed an adverse impact rate for minorities as defined by the 4/5ths rule of less than .80. The adverse impact rate for older employees as defined by the 4/5ths rule was above .80 at 1.36%. However, the study showed a difference of less than two standard deviations (.641) between the rates that minority and majority groups were laid-off. The standard deviation for older employee layoff rates was also less than two standard deviation points at 1.324. See Disparate Impact Analysis, Exhibit "T". Overall, the DIA supports defendant's contention that there was no discrimination in the agency-wide reduction in force.

However, "[a]lthough courts have considered both the four-fifths rule and standard deviation calculations in deciding whether a disparity is sufficiently substantial to establish a prima facie case of disparate impact, there is no one test that always answers the question. Instead, the substantiality of a disparity is judged on a case-by-case basis." Smith, 196 F.3d at 366 (citing Watson, 487 U.S. 977, 996 (1988) (approving the case-by-case approach because "statistics come in infinite variety and . . . their usefulness depends on all of the surrounding facts and circumstances")). Thus, although the results of the Disparate Impact Analysis strongly suggest plaintiff will be unable to establish a *prima facie* case, the Court will examine the entire record.

**The Parties' Positions**

Ten individuals, all of whom were white, with the exception of plaintiff, held the Managing Architect A Title before the RIF. Five managing architects, four of them white and plaintiff, were terminated by the RIF. 56.1 Statement ¶¶ 34, 35; see also List of SCA employees who were laid-off, resigned, or participated in a retirement incentive as part of the reduction in force, Exhibit "Q"; List of SCA employees as of September 17, 2003, Exhibit "L". In addition, two of the five individuals retained in plaintiff's position were older than plaintiff. 56.1 Statement ¶¶ 34, 35.

Defendant argues that plaintiff fails to identify *any* basis for his claims of discrimination. In fact, plaintiff testified that he confronted no discriminatory comments, language, gestures or communications in connection with his lay-off:

> Q: Were there any kind of comments made to you that lead you to believe that you were laid off on the basis of race or national origin?
> A: No, he did not make the comments it is the action of termination.
> Q: So no body language or gestures?
> A: No.
> Q: There were no E-mail that you were discriminated against or other documents?
> A: No.

Plaintiff's Deposition at 106. Plaintiff's allegations that he was terminated based on discrimination standing alone will not establish discriminatory intent. See Meckenberg v. New York City Off-Track Betting, 42 F. Supp. 2d 359, 373 (S.D.N.Y. 1999).

Plaintiff's opposition argues that as he was the only minority in the Managing Architect A Title, his termination eliminated 100% of the minorities in his division. Plaintiff's Opposition at p. 5. Plaintiff's position is unavailing as it ignores the fact that four of the five laid off managers were white and that two of the five managers retained by SCA were *older* than plaintiff.

In response to defendant's argument that plaintiff presented no evidence of disparate treatment, plaintiff argues that two individuals who were retained by SCA, Vinubhai Patel and Aileen Del Prado,

13

were treated more favorably than he was based on discrimination. Plaintiff's Opposition at p. 5. To establish a disparate treatment claim, a plaintiff may raise an inference of discrimination by proffering evidence that similarly situated employees were treated more favorably. See Shumway v. United Parcel Serv., Inc., 118 F.3d 60, 63 (2d Cir. 1997); Stepheny v. Brooklyn Hebrew School for Special Children, 356 F. Supp. 2d 248, 258 (E.D.N.Y. 2005). An inference of discrimination may be established by a showing that "the employer treated plaintiff less favorably than a similarly situated employee outside [his] protected group." Mandell v. County of Suffolk, 316 F.3d 368, 379 (2d Cir. 2003) (internal quotations omitted). "Although the ultimate burden in making a *prima facie* case is slight, the issue of whether fellow employees are similarly situated is somewhat strict." Lanzo v. City of New York, 96-CV-3242, 2000 WL 804628, *6 (E.D.N.Y. May 18, 2000).

Plaintiff has failed to show that he was treated less favorably than a similarly situated employee outside his protected group. Defendant points out that Patel and Del Prado hold the title of Managing *Engineer*, Level A, not Managing *Architect*, Level A. Therefore, these individuals are not similarly situated to plaintiff. See List of SCA Employees as of September 17, 2003, Exhibit "L"; Shumway, 118 F.3d at 64. In addition, even if they held the same title as plaintiff, defendant avers that Del Prado and Patel both had more experience at SCA and had more experience managing consulting contracts than plaintiff. Barrett Reply Decl. ¶¶ 7, 8; Loucar v. Boston Market, 294 F. Supp. 2d 472, 279 (S.D.N.Y. 2003) (employee with more experience not similarly situated to a less experienced employee even though both held the same title). Finally, plaintiff's choice of these comparators is fatal to his discrimination claim as both Patel and Del Prado identify themselves as "Asian." Moreover, Patel is an Asian Indian like plaintiff and was 60 years old at the time of the RIF. Barrett Reply Decl. ¶ 8. See McNair v. NYC Health and Hospital Co., 160 F. Supp. 2d 601, 605-606 (S.D.N.Y. 2001) (no showing by plaintiff of disparate treatment of any similarly situated employee fatal to claim).

14

Defendant submits the affidavit of E. Bruce Barrett, Vice President of Architecture & Engineering at SCA, which states that plaintiff had primarily been responsible for coordinating in-house projects which were drastically reduced after the RIF and that SCA's new emphasis was on supervising and managing *consultant* contracts or supervising and reviewing the work of the technical staff. As a result, plaintiff's skills were less in demand than those managers who had direct experience supervising technical staff or managing consultant contracts. Finally, defendant points out that plaintiff had less than two years of SCA experience at the time of the RIF while each of the employees retained in his title had more SCA experience than plaintiff. Barrett Reply Decl. ¶¶ 2-6. "In short, all the individuals named by plaintiff, Messrs. Elberfield, Falcone, Friedman, Huhlewych, Mittleman, Patel and Ms. Del Prado had either more experience or greater experience than plaintiff in meeting the needs of a downsized SCA." Id. ¶ 9. While plaintiff may disagree with SCA's assessment of his experience and skills, plaintiff has produced no evidence to support his discrimination claims. Jimoh v. Ernst & Young, 908 F. Supp. 220, 226, (S.D.N.Y. 1995) (an employee's disagreement with his employer's evaluation of his performance is insufficient to establish discriminatory intent).

Plaintiff's disagrees with defendant's determination that the newly reorganized SCA would require individuals with experience managing consultant contracts as opposed to employees who coordinated in-house projects. Plaintiff's Opposition at 10. Plaintiff however presented no evidence to contradict defendant's assertion.[4]  Thronley v. Penton Publishing, 104 F.3d 26, 29 (2d Cir. 1997)

---

[4] Plaintiff has not submitted a single sworn affidavit, even as to his version of the events surrounding his termination. "[H]earsay testimony . . . that would not be admissible if testified to at the trial may not properly be set forth" in opposition to a motion for summary judgment." Beyah v. Coughlin, 789 F.2d 986, 989 (2d Cir. 1986); Fed. Rule Civ. Pro. 56(e) ("Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."); see also Sarno v. Douglas Elliman-Gibbons & Ives, Inc., 183 F.3d 155, 156 (2d Cir. 1999).

15

(employer has the right to determine job criteria). Moreover, plaintiff has presented no evidence for his argument in the alternative that the coordination of in-house design projects and the management of consulting contracts are equivalent job responsibilities. Plaintiff's subjective view of his capabilities does not bind the employer. See Vanhorne v. N.Y. City Transit Auth., 273 F. Supp.2d 209, 214 (E.D.N.Y. 2003) (a plaintiff's personal conclusory assumptions as to the reasoning behind an employment decision are insufficient to support an inference of discrimination).

Plaintiff has not established a *prima facie* case of discrimination. Plaintiff offers no evidence of discriminatory animus or of disparate treatment and relies solely on his conclusory allegations. As plaintiff has failed to establish a *prima facie* case of discrimination based on his race, national origin or age, defendant's motion for summary judgment should be granted and plaintiff's claims should be dismissed.

### 4. Plaintiff's Retaliation Claim

To establish a *prima facie* case of retaliation in violation of Title VII, plaintiff must show that: (1) he participated in an activity protected under Title VII; (2) the employer was aware of his participation in the protected activity; (3) the employer took adverse action against plaintiff based on his participation in the protected activity; and (4) there was a causal connection between the protected activity and the adverse action taken by the employer. Tomka v. Seiler Corp., 66 F.3d 1295, 1308 (2d Cir. 1995) (citations omitted).

Although the Supreme Court in Burlington Northern & Santa Fe Railway Co. v. White, 126 S. Ct. 2405 (2006) recently stated that "the anti-retaliation provision does not confine the actions and harms it forbids to those that are related to employment or occur at the workplace" it concluded "that

the provision covers those (and only those) employer actions that would have been materially adverse to a reasonable employee or job applicant ... the employer's actions must be harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." Id. at 2409.

Plaintiff claims that retaliation is the reason why defendant filed to rehire him for the Managing A position posted by SCA on February 15, 2005. Plaintiff admits however that he did not apply for this position. Plaintiff's Deposition at 122. Therefore, his claim that defendant retaliated against him when it failed to hire him for this position should be dismissed. See Plaintiff's Opposition at 8, 10. Plaintiff argues that the Court should excuse his failure to apply because he called a superior at SCA and informed him that he wanted to reapply for his job. Plaintiff also argues that he was discouraged from applying for the position because someone at the EEOC told him that SCA would not hire him back. These arguments are unavailing. See Id. Quite simply, plaintiff cannot claim retaliation based on defendant's failure to rehire him for a position he admits he did not apply for. Brown v. Coach Stores, Inc., 163 F.3d 706, 709 (2d Cir. 1998) ("We read McDonnell Douglas and Burdine generally to require a plaintiff to allege that she or he applied for a specific position or positions and was rejected therefrom, rather than merely asserting that on several occasions she or he generally requested promotion.").

Plaintiff also makes vague allegations that SCA controls the hiring of employees at temporary agencies and consulting firms. Plaintiff's Deposition at 107; Plaintiff's Opposition at 13. Plaintiff's opposition points to an email allegedly sent to him by someone at a temporary agency that said "SCA is not hiring back past employees as consultants." Plaintiff's Opposition at 13. Even if this hearsay statement would be admissible, it is not evidence of retaliation.

17

As plaintiff has not presented facts demonstrating that his former employer took adverse action against him based on his participation in protected activity, his retaliation claim cannot withstand defendant's motion for summary judgment. Plaintiff's speculations, generalities and gut feelings, however heartfelt, do not allow for an inference of discrimination. Scott v. Coughlin, 344 F.3d 282, 287 (2d Cir. 2003) (conclusory allegations of retaliation insufficient to defeat a motion for summary judgment).

## CONCLUSION

Accordingly, it is respectfully recommended that defendant's motion for summary judgment should be granted and plaintiff's complaint should be dismissed.

## FILING OF OBJECTIONS TO REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the ten day period. Failure to file a timely objection to this Report generally waives any further judicial review. Marcella v. Capital District Physician's Health Plan, Inc., 293 F.3d 42 (2d Cir. 2002); Small v. Secretary of Health and Human Services, 892 F.2d 15 (2d Cir. 1989); see Thomas v. Arn, 474 U.S. 140 (1985).

SO ORDERED.

/S/

LOIS BLOOM
United States Magistrate Judge

Dated: May 14, 2007
Brooklyn, New York